Flynn et al. v. The Des Moines & St. Louis R'y Co. et al.

REVERSED.

FLYNN ET AL. v. THE DES MOINES & ST. LOUIS R'y CO. ET AL.

1. **Jurisdiction**: REMOVAL TO FEDERAL COURTS: CITIZENS OF DIFFERENT STATES. Before an order will be made removing a cause to the federal courts on the ground that it involves a controversy between citizens of different states, an answer or other plea must be filed, raising an issue of fact or law, from which it may be seen that the alleged controversy actually exists. *Stanbrough v. Griffin*, 52 Iowa, 112, and *Bosler v. Booge*, 54 Id., 251, followed.

2. ———: ———: ———: FACTS NOT WARRANTING. Where a controversy is primarily between citizens of this state, and a citizen of another state is made a party only for the purpose of cutting off a junior lien, such non-resident party cannot have the cause transferred to the federal courts on the ground of a controversy "wholly between citizens of different states."

3. **Contract**: BY AGENT OF UNDISCLOSED CORPORATION: RATIFICATION OF: CORPORATION BOUND BY. One H., as the agent of some one not named in the contract, entered into a written contract with the plaintiffs for the construction of a railway, under circumstances (see opinion) which justified the plaintiff in believing that H. was contracting as the agent of the defendant corporation. The defendant corporation by subsequent acts (see opinion) recognized and ratified the contract as its own. *Held* that it could not afterwards avoid liability under the contract, on the ground that H. had not been appointed agent of the corporation by its proper board of directors, and that he was not an officer of

the company sustaining such relations to it that the law will imply his authority to bind it as its agent.

4. ———: WAIVER OF ONE CONDITION LEAVES THE OTHERS INTACT: Where one of the conditions of a contract is waived, the others are left intact; and, upon the performance of them, a recovery may be had upon the original contract with the waived condition eliminated. *Edgerly v. Farmers' Ins. Co.*, 43 Iowa, 587, and *Woods v. Miller*, 55 Id., 168, followed.

5. ———: AGREED ARBITER OF DISPUTED FACTS: STANDING OF PARTIES IN COURT. Where it was agreed in a contract for the construction of a railroad that the company's engineer should certify to the performance of the work, and should determine all questions in dispute between the parties, *held* that this did not preclude the builders from maintaining an action in court to recover of the company the balance due them under the facts certified by the engineer.

6. **Practice:** MISJOINDER OF CAUSES: HOW ASSAILED: WAIVER OF. A misjoinder of causes of action is waived, unless assailed before defense is made, by motion to strike out the cause or causes improperly joined. Code, § § 2632, 2633.

### *Appeal from Polk Circuit Court.*

### FRIDAY, APRIL 25.

THE petition states that plaintiff entered into a written contract with the Des Moines & St. Louis Railroad Company for the construction of a portion of the line of railway of said company between the city of Des Moines and Albia, and afterwards entered into a certain other contract with said company for the construction of a certain other portion of said railway; (Copies of the contracts are attached to and made a part of the petition;) that the plaintiffs fully performed said contracts upon their part, except as to the stipulated time of performance, which was waived; that they have filed in the office of the clerk of the district court of Polk county a sufficient statement and account to entitle them to a mechanic's lien; that said company has failed to pay for the work and labor done under said contracts, and is indebted to the plaintiffs therefor.

The Wabash, St. Louis & Pacific Railroad Company, James F. How, and others, were made defendants, on the ground

that they claimed some interest in or lien on the property on which a mechanic's lien is sought, which interest or lien, however, it was stated in the petition, is inferior to the lien of the plaintiffs. The relief asked is that the plaintiffs may recover a judgment against the Des Moines & St. Louis company, and that for the amount found due them a mechanic's lien in their favor may be established, and that the rights of the other defendants may be declared inferior to those of the plaintiffs.

The Wabash company filed a petition for the removal of the action to the circuit court of the United States, and asked the court to make an order to this effect, which was refused. Separate answers were filed by the several defendants for whom an appearance was entered.

The Des Moines company denied that it entered into or was a party to the contracts, and pleaded, in substance, that the plaintiffs and James F. How entered into said contracts, under which the former did some work, but as to the extent and value thereof the defendant had no knowledge, information or belief; that it is provided in said contracts that ten per cent of the contract price shall be retained by said How as compensation for damages sustained by the failure of the plaintiffs to perform said contracts on their part, and that the plaintiffs have been fully paid for all they did; "that, if the work done by them upon said road shall, at the rate of compensation provided for in said contracts—as to which this defendant has not sufficient knowledge or information to form a belief—exceed the amount which has been paid therefor, said excess is less than the sum of ten per cent, which said contracts provide shall be retained as aforesaid, and that, by reason of said failure so to perform their said contracts, this defendant has sustained damages in a sum greater than the whole amount of said excess, or any money which would have become payable to the said plaintiffs upon a full and complete performance of said contracts;" that, by the terms of said contracts, the amount unpaid upon the completion thereof was to

be certified by the chief engineer of said railroad company, and that the same did not become due until ninety days had elapsed after said certificate had been furnished; and in case of dispute between the parties thereto the plaintiffs, under the terms of the contracts, waived any right of action at law or other remedy, and agreed that the decision of the chief engineer should be in the nature of an award, and be final and conclusive as to the claims of the plaintiffs under said contracts; and that no such certificate has been obtained. No affirmative relief was asked.

The defendant, How, in his answer, states that he made the contract as agent of the Wabash, St. Louis & Pacific Railroad Company, and denies the statements in the petition, and, in substance, pleaded the same defenses as the Des Moines company.

The Wabash company adopts the answer of How and the Central Trust Company. It is not deemed material to state the defenses pleaded by the latter company. To the answer of How there was a reply.

The court found for the plaintiffs, and rendered judgment against the Des Moines company, and established a mechanic's lien as asked in the petition. The defendants appeal.

*Parsons & Runnells*, for appellants.

*Wright, Cummins & Wright*, for appellees.

SEEVERS, J.—I. It is claimed by counsel for the appellants that the court erred in refusing to change the forum on

1. JURISDIC-TION: removal to federal courts: citizens of different states.

the petition of the Wabash company. Counsel agree that the petition asking the removal to the federal court is based on the following portion of the act of congress, passed March 3, 1875: "And when in any suit mentioned in this section there shall be a controversy which is wholly between citizens of different states, and which can be fully determined as between them, then either one or more of the plaintiffs or defendants actually in-

terested in such controversy may remove such suit into the circuit court of the United States for the proper district." The petition for removal, in substance, states that the Wabash company is a corporation organized under the laws of the state of Missouri, and that the controversy between it and the plaintiffs can be fully determined between them without the presence of the Des Moines company. The petition was filed and determined before the answer, was filed or any other pleading which presented any issue of law or fact between the parties, which any court was called on to determine. This court has held that, under such circumstances, the case cannot be removed to the federal court. *Stanbrough v. Griffin*, 52 Iowa 112; *Bosler v. Booge*, 54 Id., 251. But it is said, the federal courts hold otherwise. Possibly this is so, but our attention has not been called to any decision of the supreme court of the United States so holding. We, therefore, are not disposed to overrule the cases above cited.

But, conceding that we are in error in this respect, we are not satisfied that this is a controversy wholly between citizens of different states. The material ques-

2. —: —: : facts not warrant-ing.

tion is whether the Des Moines company is indebted to the plaintiffs, and whether the latter are entitled to a mechanic's lien. It is self-evident that the controversy is primarily between the Des Moines company and the plaintiffs. If there is no debt, or if there is but the plaintiffs are not entitled to a lien, then the Wabash company has no interest in this controversy. If there should be a transfer to the federal court, the questions above stated must be determined by that court, and we apprehend that it would not do this without the presence of the Des Moines company. If the Wabash company is entitled to have this cause transferred to the federal courts, then it will follow that every case brought by a citizen of this state in the state courts to foreclose a mortgage, in which action a non-resident is made a party for the purpose of cutting off a junior lien, such non-resident may have the case transferred to the federal courts.

When the supreme court of the United States so decides, it may be our duty to follow such ruling.

II.  The contracts on their face show that they were entered into and executed by the plaintiffs as party of the first part, and James F. How, agent, of the second part.  The contracts do not show for whom How was agent, and the plaintiffs seek to recover on the ground that they were made with the Des Moines company, and that How was its agent; or, if this be not so, then it is claimed that the company so acted as to induce the plaintiffs to believe that How was its agent and that he contracted for said company.  The defendants claim, as we understand, that How was agent of and made the contracts for the Wabash company.  We find from the evidence that the latter company, in 1881, desired to construct, or have constructed, a line of railroad from Albia to Des Moines, and, for some reason satisfactory to it, preferred to have the road constructed by and in the name of an Iowa corporation.  To effect this object, it made an arrangement with four gentlemen, Clarkson, Runnells, Polk and Hubbell, whereby they were to organize a corporation under the laws of this state, and the persons just named were to take sufficient stock therein to enable then to act as directors and officers of the company, and the Wabash company was to furnish a subscriber for all the balance of the stock, and such subscriber, or the Wabash company, was to furnish the money for the purpose of constructing the road.  The gentlemen above named were to contribute their services upon terms satisfactory to the parties.  The result of this arrangement was the formation of the defendant, " The Des Moines & St. Louis Railroad Company," of which Mr. Clarkson was chosen president.  The defendant, How, is the subscriber furnished by the Wabash company, and we presume he held the stock in trust for that company.  Mr. Clarkson caused to be published in the public journals the following:

*3. CONTRACT: by agent of undisclosed corporation: ratification of: corporation bound by.*

"PROPOSALS WANTED.

"OFFICE OF DES MOINES & ST. LOUIS RAILROAD CO. ⎱
        "DES MOINES, APRIL 5, 1881.        ⎰

" Bids are invited for the grading and bridging of the first twelve or fifteen miles south-easterly from the city of Des Moines, on the Des Moines & St. Louis Railroad. Bids will be received for the grading and bridging together, or separately. Profiles and specifications can be seen at the office of the company in Des Moines, on and after April 15. Bids will be opened at 11 o'clock A. M., April 20. Good and sufficient bonds will be required. The company reserves the right to reject any or all bids. The rest of the line—some sixty miles—will be ready to let in sections as fast as located.

"J. S. CLARKSON,
                    "*President.*"

In pursuance of the foregoing, the plaintiffs made a bid for the work, and gave the same to Mr. Clarkson, president of the company, in its office in Des Moines, where they saw the profiles and specifications in the office of the chief engineer of the company. A few days after the first bid was so made, the chief engineer informed plaintiffs that their bid was too high, and they agreed to take less, and then, as one of the plaintiffs testifies, a contract was entered into between the officers of the company and the plaintiffs, but the same was not reduced to writing until afterwards. How was not present at this time, and took no part in the negotiations. The second contract was made at the office of the president of the company, and there were then present Mr. Clarkson, How, the chief engineer, Mr. Merrill and the plaintiffs. The latter, Clarkson, How and Merrill made the second contract. That is, as we understand, the arrangement was satisfactory to all of them.

The plaintiffs commenced work under the contracts thus entered into, and not until about three weeks afterwards were they reduced to writing, and then the plaintiffs saw and had

knowledge for the first time that the written contracts were executed by How, as agent.

Ainsworth and Gibson were the engineers, and they were employed by the Des Moines Company. The contracts provide that monthly estimates of the work done should be made by the engineers, and these formed the basis of the compensation the plaintiffs were each month entitled to receive. Such estimates were made from time to time, and the first is as follows:

"DES MOINES & ST. LOUIS RAILROAD.

"Contract for grading and bridging sections 3 to 15. First monthly estimate, June 1, 1881.

"FLYNN & GUGGERTY, *Contractors.*

"Estimate.................................$4,084.00
Deduct 10 per cent........................  408.40

"Balance................................$3,765.60
"D. H. AINSWORTH, *Chief Engineer.*
"June 4, 1881."

The other monthly estimates are the same in substance as the foregoing, except as to the quantity of work done and the amount due the contractors. There was also a final estimate made by said engineers, showing the total amount of work done and material furnished by the plaintiffs, and stating the amount of compensation they were entitled to receive, the amount paid, and the amount due them under the contracts. Mr. Clarkson, as president, wrote the plaintiffs: "The draft for your first estimate has arrived, and you will please come to the office and get it." There are several other letters written by the president and chief engineer, tending to show that they regarded the Des Moines company as the contracting party.

H. A. Huff, claiming to be a sub-contractor under the plaintiffs, commenced an action to establish a mechanic's lien on the road. The Des Moines company appeared and, answer-

ing the petition, stated that it entered into a contract with the plaintiffs to grade and otherwise construct said road, and that said company had paid plaintiffs the full amount due them, without notice or knowledge of the claim sued on. This answer was verified by Mr. Hubbell, secretary of said company. To this answer there was attached as an exhibit one of the contracts sued on in this case.

To the foregoing evidence counsel for the defendants object, and state their legal proposition as follows: "Before any person assuming to act as agent of a corporation can bind it, his agency must be shown in one of two ways; *First*, by his appointment by its proper board of directors, or, *Second*, by the fact that he was himself an officer of the corporation, sustaining such a relation to it that the law will imply the authority." There is no evidence tending to show that there ever was a meeting of the directors of the Des Moines company, and it may be conceded that How did not sustain such relations to the company as to bind it by his acts and representations. The question, then, is, for whom was How acting when he executed the contracts as agent, or for whom were the plaintiffs justified in believing he was so acting?

The scheme, as we have seen, was to construct the road in the name of a local organization. The local company, of course, is the legal owner of the right of way, road-bed, and franchise. The officers of the company advertised for bids and entered into contracts for the construction of the road. When the contracts were reduced to writing, it was stated therein that How contracted as agent for an undisclosed principal. Such principal is either the Wabash or Des Moines company. Why should the plaintiffs suppose they were contracting with the Wabash company? They had no negotiations with that company, but all the negotiations were with the Des Moines company. Clearly they bid for the work under the belief that it was to be done by the Des Moines company. In substance, the president of the company said or represented that this company proposed to construct a railroad;

what will you do the work and furnish the necessary materials for? When the company was sued by a sub-contractor, it defended the action by asserting that it had contracted with plaintiffs and had paid them. The work has been done, and the Des Moines company is the legal owner thereof, and refuses to pay for the construction of a railroad owned by it, on the ground that it never contracted or agreed with the plaintiffs that they should work and labor for it.

At one time Mr. Clarkson wrote the plaintiffs: "We shall expect you, under your contract with us, to adjust this and, all other such matters, without further trouble to us." If the contract was with the Wabash company, why did the officers of the Des Moines company take charge of the operation, and why in fact was the latter company formed?

We think the acts, declarations and conduct of Mr. Clarkson, president of the Des Moines company, and by whose acts and conduct the company is clearly bound, when considered, in connection with the facts and circumstances, clearly and sufficiently show that the contract was, and must necessarily have been, made by How, as agent of and for the Des Moines company, and that the plaintiffs had the right to so believe, and that the Des Moines company, so far from repudiating the contract made by How, have ratified and adopted it.

III. The contracts provide that the work shall be done within a specified time, but it was not completed until some-time afterwards. Plaintiffs claim that the time of performance was waived. Conceding this, counsel insist that, where there is a special contract, there can be no recovery under an implied contract. This may be conceded. But here there has been a waiver of the time of performance. In effect, such provision must be regarded as having been eliminated from the contracts. But all the other provisions remain intact, and, as there has been performance, why should there not be a recovery under the contracts. The plaintiffs do not set up an excuse for not performing, but that in truth and in fact, because of the acts of the par-

4. ———: waiver of one condition leaves others intact.

ties, the contracts fail to stipulate when the plaintiffs were to perform. We may as well say here as elsewhere that the evidence clearly and without doubt shows the waiver. That it is proper to declare on a contract and set up a waiver of any of the conditions, was substantially held in *Edgerly v. Farmer' Ins. Co.*, 43 Iowa, 587, and *Woods v. Miller*, 55 Id., 168. We think plaintiffs are entitled to recover on the contract.

IV. It is insisted that the plaintiffs have taken collateral security for the payment of the indebtness, and, therefore, under the statute, they are not entitled to a lien. We deem it sufficient to say that we are unable to concur in this proposition, and deem it unnecessary to state our reasons at length.

V. The following provisions are contained in the contracts:

"(1) The party of the second part hereby agrees to pay THE SAME as number 4, ante. the party of the first part, upon the certificate of the chief engineer that the work has been performed in accordance with the contract and specifications.

"(2) Payments shall be made on or before the 20th day of each month on the certificate of the engineer, for work done to the end of the previous month, deducting ten per cent from the value of such work as an agreed compensation for damages, to be retained forever by the second party, in case of failure by the first party to complete the whole amount of the work embraced in this contract according to the several stipulations of this agreement.

"(3) All other sums remaining unpaid the party of the second part agrees to pay the party of the first part within ninety days after all the covenants and undertakings of the party of the first part hereunder shall have been completely performed, and the chief engineer shall have certified thereto.

"(4) It is mutually agreed that the decision of the chief engineer shall be final and conclusive in case of any dispute which may arise between the parties to this agreement, relative to or touching the same; and each of said parties does

hereby waive▸ any right of action at law, or other remedy.."
It is insisted that the foregoing stipulation as to procuring
the certificate of the engineer is a condition precedent, and
that this action cannot be maintained, because it has not been
shown that such certificate has been procured. The provision
in substance, is, that payments are to be made on the certifi-
cates of the engineer, and the final estimate is to be paid
within ninety days after the engineer certifies that the plaint-·
iffs have fully performed on their part. It seems to us that
the final estimate made by the engineer covers the whole
ground, and that it shows that the plaintiffs have fully per-
formed, except as to the time of performance stipulated in
the contracts. Such estimate is as follows:

"Des Moines & St. Louis Railroad Company. Bridging
and grading sections 16 to 42 inclusive. Flynn & Guggerty,
contractors." Then follows an itemized statement of the
material furnished and the work done, with the price fixed
by the contracts. The amount paid the plaintiffs and the
amount due them is stated, and it is signed by the engineer.
This includes all the engineer could certify to, except the
time of performance; and, as we have said, there was no pro-
vision in the contracts as to the time of performance, and
hence the engineer could not certify in relation thereto.

We are at a loss to conceive what there was for the engineer
to certify to except what is stated in the final estimate. Our
attention is not called to any deficiency, except as to the time
of performance. The contract, as it now stands, simply pro-
vides that the plaintiffs shall do certain work and furnish
certain materials. The engineer, in substance, certifies that
this has been done, and therefore the claimed condition prece-
dent has been complied with.

VI. It is next insisted that the only remedy for a breach
of the contract is that the engineer must determine all ques-
tions in dispute between the parties. As we
have said, the engineer has ascertained and certi-
fied the amount due the plaintiffs under the con-
tracts. But he has no power to enforce his find-

5. ——: agreed arbi-
ter of dis-
puted facts:
standing of
parties in
court.

ing, and therefore an appeal to the courts is required to enforce what the engineer has in substance determined that the defendants should pay. There is no dispute for the en-engineer to settle. The defendant obstinately refuses to pay the amount the engineer has certified to be due. In our opinion, all questions of fact sufficient to enable the plaintiffs to recover, or to enforce through the courts the finding of the engineer, have been certified by the latter.

VII. It is insisted that the reserved ten per cent must be regarded as liquidated damages; that is, the claim is that the plaintiffs failed to perform within the stipulated time, and for this breach the defendant is entitled to retain the ten per cent as liquidated damages. But, as we have said, the stipulation as to time was waived or eliminated from the contract. As the plaintiffs have performed the contract, the defendant is not entitled to any sum as liquidated damages.

*THE SAME as number 4, ante.*

VIII. It is said: "If plaintiffs failed to perform their contracts according to their terms, either as to time or in any other respect, and such failure would not entirely defeat the action, and if the ten per cent agreed upon as compensation cannot be sustained as such, defendants are still entitled to the amount of their loss in consequence of plaintiffs' failure to perform." It will be observed that this proposition is based upon the assumed fact that the plaintiffs had failed to perform. But as we have found that they fully performed the contracts on their part, the proposition above stated has no application to this case.

*THE SAME.*

IX. It is lastly insisted that the court erred in rendering a personal judgment against the Des Moines company, and in establishing a lien in the same action. It is provided by statute that "the action for mechanic's lien shall be prosecuted by equitable proceedings, and therewith shall no other cause of action be joined." Code, § 2510. It is assumed that there are two independent causes of action stated in the petition, one at law and the

*6. PRACTICE: misjoinder of causes : how assailed : waiver of.*

other in equity. Conceding, for the purposes of this case, that there is a misjoinder of causes of action, and turning to the statute to ascertain what the remedy in such case is, we find that, "at any time before the defense," the court "shall, on motion of the defendant, strike out of the petition any cause or causes of action improperly joined with others." Code, § 2632. "All objections to the misjoinder of causes of action shall be deemed to be waived unless made as provided in the last section." Code, § 2633. If the motion had been made and sustained, the only effect would have been a division of the causes of action; but both could have been prosecuted. By failing to file the motion, the objection now urged was waived. *Grant v. McCarty*, 38 Iowa, 468; *Hines v. The White Breast Coal & Mining Co.*, 48 Id., 296.

AFFIRMED.